UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| MICHAEL GREENE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:19-024-GFVT |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Michael Greene is an inmate confined at the United States Penitentiary ("USP")-Canaan in Waymart, Pennsylvania. Proceeding without an attorney, Greene filed a civil rights action against prison officials pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80 ("FTCA"), and Kentucky state law. [R. 6, 6-1]

By separate order, the Court has granted Greene's motion to proceed without prepayment of the filing fee. [R. 9] Thus, the Court must conduct a preliminary review of Greene's complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A. A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997), abrogated on other grounds, *Jones v. Bock*, 549 U.S. 199 (2007).

The Court evaluates Greene's complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321

F.3d 569, 573 (6th Cir. 2003).  At this stage, the Court accepts the plaintiff's factual allegations as true, and his legal claims are liberally construed in his favor.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  However, the principles requiring generous construction of *pro se* pleadings are not without limits.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Wilson v. Lexington Fayette Urban County Government*, No. 07-cv-95-KSF, 2007 WL 1136743 (E.D. Ky. April 16, 2007).  A complaint must set forth claims in a clear and concise manner, and must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). *See also* Fed. R. Civ. P. 8.  In addition, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555.

Moreover, although the Court has an obligation to liberally construe a complaint filed by a person proceeding without counsel, that obligation does not extend so far as to require or permit it to create arguments or claims that the plaintiff has not made.  *Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003) ("Pro se parties must still brief the issues advanced with some effort at developed argumentation.").  Thus, vague allegations that one or more of the defendants acted wrongfully or violated the plaintiff's constitutional rights are not sufficient. *Laster v. Pramstaller*, No. 08-CV-10898, 2008 WL 1901250, at *2 (E.D. Mich. April 25, 2008). The Court is not required to create a claim for the plaintiff, nor to "conjure up unpled allegations." *Moorman v. Herrington*, No. CIV A 4:08-CV-P127-M, 2009 WL 2020669, at *1 (W.D. Ky. July 9, 2009)(citations omitted).

## I.

Before reviewing the substance of Greene's claims, the Court must first address the manner in which Greene has chosen to proceed in this litigation thus far. Greene's original complaint [R. 1] consists of a 10-page, single-spaced document typed in an extremely small font that purports to bring fifteen different types of claims against twenty-one different defendants at two different federal Bureau of Prisons ("BOP") facilities, with no real effort to articulate which particular type of claim (e.g., excessive force, negligence, assault and battery, intentional infliction of emotion distress, etc.) is alleged against each individual defendant. In addition, Greene's claims are confusingly set forth in a narrative form that is rambling, repetitive, and often digresses into commentary offering Greene's own subjective theories and opinions on various practices and procedures followed by the BOP and the Department of Justice ("DOJ"). Because Greene's original complaint was not filed on a form approved for use by this Court as required by Local Rule 5.2(a)(4), the Court forwarded the appropriate form to Greene and directed him to re-file his complaint using the Court's form. [R. 5] The Court further instructed Greene to "describe the *facts* of his case, specifically identifying the people, dates, places, and actions which are relevant to his claims, and explain what he wants the Court to do." [*Id.* (emphasis in original)]

Ignoring the Court's instructions to describe only the facts of his claims, Greene re-filed his complaint using the form provided by the Court and incorporated his original complaint by reference. [R. 6, 6-1] This approach directly contradicts the Court's clear instructions, which were actually intended to help Greene simplify his complaint so that it might comply with the requirements of the Federal Rules of Civil Procedure. Indeed, Greene's "amended" complaint continues to run afoul of Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to set forth its claims in a manner that is "short and plain." *See generally* Fed. R. Civ.

P. 8(a).  Despite these shortcomings, the Court will nevertheless review Greene's claims in order to move this matter forward.[1]

## II.

To be sure, Greene's allegations sweep broadly, alleging a variety of claims against twenty-one defendants at two different federal facilities based upon multiple separate incidents. [2] However, from what the Court is able to ascertain, Greene's complaint arises from several separate incidents that he claims occurred throughout 2017 and 2018 at both USP-Big Sandy in Inez, Kentucky, and at USP-McCreary in Pine Knot, Kentucky.

Greene alleges that, in November 2017, Defendant Officer Amanda Hirst watched him shower, which he claims female officers are not allowed to do.  He further alleges that, in December 2017, Defendant Officer Uzley strip-searched Greene while Officer Hirst watched. Greene claims that he was then retaliated against for a complaint he filed against Officers Hirst

---

[1] One of "the disadvantages of [Greene's] scattershot, 'kitchen sink' approach to pleading" is a prolonged screening period.  *Chrysler Credit Corp. v. Anthony Dodge, Inc.*, No. 92 C 5273, 1995 WL 493436, at *1 (N.D. Ill. Aug. 15, 1995).  "It is not that such an approach is disallowed (except of course when the claims are frivolous). . . . But legality and advisability are two different things[.]"  *Id.*  Thus, to the extent that Greene's "request for current status of this action" [R. 13] raises questions regarding the screening of his case, any delay in screening is the result of the manner in which Greene has chosen to present his claims.  Accordingly, to the extent that Greene's "request" has been docketed as a motion seeking affirmative relief for administrative purposes, that motion will be denied.

[2] In his complaint, Greene identifies the following individuals as Defendants: U.S. Department of Justice/Office of Inspector General, the Bureau of Prisons, Michael Horrowitz (Inspector General), the Director of the Bureau of Prisons, Gregory A. Kizziah (Warden, USP-McCreary), Special Agent McMahan (Office of Inspector General), Gomez (Associate Warden, USP-McCreary), (Captain at USP-Big Sandy, Lt. Armes (USP-Big Sandy), Lt. Meade (USP-Big Sandy), Lt. Kuntzman (USP-Big Sandy), Officer Mitchell (USP-Big Sandy), Officer Uzley (USP-Big Sandy), Officer Amanda Hirst (USP-Big Sandy), Officer Ferguson (USP-Big Sandy), Officer Gadsbury (USP-McCreary), Dr. Parsons (USP-McCreary), John Doe #1 and #2, Jane Doe #1 and #2.  Although his complaint also makes references to other prison officials, he does not appear to assert any claims for relief against these individuals and the officials listed above are the only Defendants identified by Greene in his case caption (which he clearly labels "ALL DEFENDANTS").  [R. 6-1 at p. 1]

and Uzley alleging violations of the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601 *et seq.* based upon these incidents. Specifically, he alleges that Officers Hirst and Uzley threatened and intimidated him; Officer Ferguson used excessive force against him in an incident which he claims was orchestrated by Officer Hirst; and Officer Hirst, Officer Ferguson, and two other male officers conspired to issue a fraudulent incident report issued against Greene falsely accusing him of threatening Officer Hirst.

Greene further alleges that, after he notified Lt. Kuntzman of "serious staff misconduct" related to Officers Hirst and Uzley, Lt. Kuntzman retaliated against him. According to Greene, Lt. Kuntzman falsely cited Greene's use of a window covering in his cell as justification for spraying Greene's cell with an excessive amount of "OC spray," which cut off Greene's breathing and burned his skin, which Greene claims was an excessive use of force. He further claims that, after he was extracted from his cell and taken to a shower area for decontamination, Lt. Kuntzman and staff intentionally made the water too hot so that he could not shower, then denied Greene shoes, forcing him to walk barefoot through an area contaminated with human feces and urine.

He claims that, after Greene returned to his cell, he covered his window again, at which point Lt. Kuntzman and staff returned to his cell, led him to the USP-Big Sandy medical department and placed him in four-point restraints. He then claims that, after Greene told Lt. Armes that he had not been allowed to properly decontaminate after he had been sprayed with the OC spray, Lt. Armes told him that he would allow Greene to decontaminate if Greene engaged in a sexual act with Officer Mitchell. Greene claims that he refused, but that Lt. Armes continued to threaten Greene with sexual assault. He claims that this incident constitutes "calculated torture" and was the result of a conspiracy among Lt. Meade, Lt. Kuntzman, Lt.

Armes, USP-Big Sandy's Captain, Warden Kizziah, Officer Mitchell, and John Does, as these Defendants all had a duty to protect Greene from the use of excessive force, cruel and unusual punishment and torture and/or report that it had occurred. Greene alleges that, by failing to do so, each Defendant became "complicit conspirators" in a conspiracy to violate Greene's "civil rights, constitutional rights, [Greene's] rights related to Kentucky Laws and the Federal Tort Claims Act." Greene then claims that he was forced to return to his cell that had been sprayed with "O.C. spray gas," but had not been decontaminated.

Next, Greene alleges that, in February 2018, Greene was interviewed by Defendant Special Agent McMahan (whom Greene identifies as a special agent with the DOJ's Office of the Inspector General) regarding Greene's claims of sexual misconduct. Greene states that he asked Special Agent McMahan why it had taken him so long to show up and McMahan responded, "This is the federal government everything moves slow." Greene alleges that the failure of the DOJ to timely intervene after his complaints caused Greene's physical assault by Officer Ferguson. He also alleges that the DOJ failed to properly supervise Special Agent McMahan to ensure that he timely responded to Greene's PREA complaints. Greene also refers to some difficulty he encountered obtaining BP-8 forms from Counselor Lockwood and Associate Warden Garza, although neither Lockwood nor Garza are identified as Defendants.

Greene alleges that he was then transferred to USP-McCreary. With respect to the staff at USP-McCreary, Greene alleges that: 1) he was strip-searched by Officer Gadsbury "for no legitimate reason" while Gadsbury stared at Greene's private parts; 2) Dr. Parsons failed to provide him with brochures and documents that he claims a non-profit organization had left with her to give to Greene, acting with deliberate indifference to Greene's mental health needs; 3) when questioned by "plaintiff B.M." (it is unclear if this is a reference to Greene or another

inmate), Warden Gregory Kizziah stated that an officer may stick his hands in the front of an inmates' pants during a pat search; 4) in May 2018, a nurse with USP-McCreary's medical department was deliberately indifferent to Greene's medical needs when he requested treatment for the burns he claims to have suffered at USP-Big Sandy.

The remainder of Greene's complaint expresses dissatisfaction with a variety of the policies and practices of the DOJ and the BOP. For example, he alleges that the DOJ's practices with respect to PREA complaints are wholly inadequate, grossly negligent, and violate inmates' constitutional rights. He also complains of the BOP's policies regarding the use of chemical spray, four-point restraints, strip searches, pat downs, as well as its policies regarding sexual misconduct.

Based on his allegations, Greene alleges the following claims (although it is not entirely clear which claims he alleges against which defendant): excessive force, cruel and unusual punishment, negligence, assault and battery, intentional infliction of emotional distress, torture, conspiracy to violate plaintiff's civil and constitutional rights, negligent hiring, training, supervising, evaluating and retention, conditions of confinement, inadequate and deliberately indifferent medical and mental health care, sexual harassment, sexual assault, failure to protect, invasion of privacy, and denial of due process. [R. 6-1 at p. 1] Greene seeks damages in the amount of $39,700,000.00. He further states that he is suing each named Defendant in their individual and official capacities.

To be sure, it is not clear whether Greene has fully exhausted his administrative remedies with respect to any of his claims. He claims that he has "vigorously attempted" to do so, but his efforts have been thwarted by BOP staff. [R. 6-1 at p. 2] Moreover, in light of the vague nature of Greene's allegations, coupled with the lack of clarity regarding his efforts (if any) to pursue

his administrative remedies, it appears possible that at least some of his claims are barred by the applicable statute of limitations. However, these are affirmative defenses and it is not clear from the face of his complaint the extent to which Greene's administrative remedies have been exhausted, nor whether his complaint was timely filed. Accordingly, the resolution of these issues must wait for another day. *Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013).

**III.**

**A.     Greene's Tort Claims**

To the extent that Greene seeks to pursue claims sounding in tort law (i.e., negligence, assault and battery, intentional infliction of emotional distress, negligent hiring, medical malpractice, sexual harassment, and/or invasion of privacy), claims predicated upon the negligence or wrongful acts or omissions of federal employees acting within the scope of their employment may only be pursued under the Federal Tort Claims Act, 28 U.S.C. § 2670 *et seq.* ("FTCA"). This includes Greene's claims based on his allegations that various BOP and DOJ policies (such as the policies regarding sexual misconduct, investigation of PREA complaints, reporting policies, use of chemical spray, use of restraints, and prisoner "pat down" policies) were either negligently or wrongfully enforced by various BOP and DOJ officials.

The "FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee." *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990) (citing 28 U.S.C. § 2679(a)). In addition, the Westfall Act, 28 U.S.C. § 2679(b)(1), immunizes federal employees from tort liability for actions taken within the scope of their employment. *Roberts v. United States*, 191 F. App'x 338 (6th Cir. 2006). Because the remedy against the United States provided by the FTCA is exclusive with respect to claims that fall within its scope, a plaintiff may not circumvent its exhaustion or limitations provisions merely

by pursuing a tort claim under state law directly against the federal employee in his or her individual capacity. 28 U.S.C. § 2679(b)(1).

While Greene names the United States Bureau of Prisons and the United States Department of Justice/OIG as Defendants, he does not name the United States as a Defendant, as is required for an FTCA claim. However, in light of the generous construction allowed *pro se* pleadings, the Court will direct the Clerk of the Court to dismiss the United States Department of Justice/OIG and the Bureau of Prisons as Defendants and substitute the United States as the Defendant with respect to Greene's tort claims. While it is unclear whether Greene presented any of these tort-based claims to either the BOP or DOJ for administrative settlement prior to filing his claims, 28 U.S.C. § 2675(a), and/or whether Greene's claims are subject to dismissal for other reasons, a response is required from the United States before these issues may be considered further.

**B.      Greene's Constitutional Claims**

Greene's complaint appears to invoke two provisions of the United States Constitution – the First Amendment (retaliation) and the Eighth Amendment (excessive force, failure to protect, and deliberate indifference).[3] To the extent that Greene alleges these constitutional claims against any of the Defendants, those claims may only be pursued under *Bivens*, which held that an individual may "recover money damages for any injuries...suffered as a result of [federal] agents' violation of" his constitutional rights. *Bivens* 403 U.S. at 397.

---

[3] Although the "claims" section of Greene's complaint also refers to a denial of due process claim, [R. 6-1 at p. 1, ¶1], Greene does not allege any facts in support of such a claim, nor does he clearly identify any Defendant against whom this claim is asserted. Accordingly, to the extent that Greene seeks to allege a violation of due process, this claim will be dismissed. *See* Fed. R. Civ. P. 8.; *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Howaever, a *Bivens* claim is only properly asserted against individual federal employees in their individual capacities. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). Thus, Greene may not bring a *Bivens* claim against the United States, the BOP, or the DOJ. *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 72 (2001)("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."). Accordingly, to the extent that Greene alleges constitutional *Bivens* claims against the United States, the BOP, and/or the DOJ, these claims will be dismissed.

In addition, to the extent that Greene alleges his constitutional claims against any of the individual Defendants in their official capacities, his claims must be dismissed. A suit against a government employee in his or her "official capacity" is not a suit against the employee for his or her conduct while performing job duties for the government but is instead a suit against the government agency that employs the individual. Thus, an official capacity suit against an employee of the BOP or the DOJ is a suit against the BOP or DOJ itself, which are federal agencies. While *Bivens* authorizes suits against federal employees for violations of civil rights, it does not waive the sovereign immunity enjoyed by the United States and its agencies. *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 370 (6th Cir. 2011) (*Bivens* claims may be asserted against federal officials only in their individual capacities); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003). Thus, Greene's constitutional claims against the Defendants in their official capacities will also be dismissed.

Moreover, while *Bivens* expressly validated the availability of a claim for damages against a federal official in his or her individual capacity, an officer is only responsible for his or

her own conduct.  *Iqbal*, 556 U.S. at 676-677.  *See also Ziglar v. Abbasi*, 137 S.Ct. 1843, 1860 (2017).  In order to recover against a given defendant in a *Bivens* action, the plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation of federal rights." *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (*citing Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976)).  Indeed, "[e]ven a pro se prisoner must link his allegations to material facts…and indicate what each defendant did to violate his rights…" *Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) (citing *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010); *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).

Thus, to proceed with each of his *Bivens* claims against each defendant, Greene must: 1) allege the violation of a constitutional right; 2) link his allegations to material facts; and 3) indicate what each individual defendant against whom he asserts a particular claim did to violate his constitutional rights.

1. Greene's First Amendment Retaliation Claims

After reviewing the allegations of Greene's complaint, the Court finds that Greene's allegations against Defendants Officer Hirst, Officer Uzley, Officer Ferguson, and Lt. Kuntzman are sufficient to require a response to Greene's First Amendment retaliation claims made against those Defendants.

2. Greene's Eighth Amendment Claims

The Eighth Amendment prohibits any punishment which violates civilized standards of decency or "involve[s] the unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotation marks and citation omitted).  While the Constitution "does not mandate comfortable prisons," the Eighth Amendment requires prison officials to provide inmates with humane conditions of confinement, including "adequate food, clothing,

shelter, and medical care, and...'reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment violation, a prisoner must demonstrate that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, (1981); *Wilson v. Seiter*, 501 U.S. 294 (1991)(an Eighth Amendment claim is stated where a prisoner is denied some element of civilized human existence due to deliberate indifference or wantonness); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). However, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir.1987).

An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson* 501 U.S. at 298. Thus, to state a viable Eighth Amendment claim, an inmate must allege that a prison official: 1) was actually aware of a substantial risk that the plaintiff would suffer serious harm; and 2) knowingly disregarded that risk. *Farmer*, 511 U.S. at 837.

Construed broadly, Greene's complaint alleges Eighth Amendment violations based upon: 1) the use of excessive force; 2) failure to protect; 3) sexual harassment; and 4) deliberate indifference to Greene's serious health needs.

After reviewing the allegations of Greene's complaint, the Court finds that his allegations regarding the use of excessive force against him by Officer Ferguson and Lt. Kuntzman are sufficient to require a response from those Defendants before this matter may be litigated further. In addition, to the extent that Greene alleges that Lt. Kuntzman and Lt. Armes failed to protect

Greene by leaving Greene in a four-point restraint despite being informed by Greene that he had not been properly decontaminated and that his body continued to burn from the OC spray, these allegations are sufficient to require a response from Lt. Kuntzman and Lt. Armes. However, Greene's Eighth Amendment claims based upon his allegations of harassment – including his allegations that Officer Hirst watched him shower, that Officer Uzley strip-searched him in front of Officer Hirst, that Lt. Armes threatened Greene with sexual assault, and that he was strip-searched by Officer Gadsbury – must be dismissed for failure to state a claim for which relief may be granted.

First, to the extent that Greene alleges verbal harassment, it is well-established that verbal abuse or general harassment by a prison guard does not constitute cruel and unusual punishment in violation of the Eighth Amendment. *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding harassment and verbal abuse, while "shameful and utterly unprofessional ... [they] do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Ivey*, 832 F.2d at 955. *See also DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("[t]he use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution."); *Jackson v. Hopkins Cnty. Det. Ctr.*, No. 4:12CV-P82-M, 2012 WL 5472024, at *6 (W.D. Ky. 2012) ("[W]hile reprehensible and not condoned, racial epithets and verbal abuse alone are insufficient to state a constitutional violation under § 1983."). Thus, the alleged verbal comments to Greene cannot form the basis of a valid Eighth Amendment claim.

Although Greene purports to also bring a claim of "sexual assault," [R. 6-1 at p. 1, ¶1] he does not allege that he was ever actually physically sexual assaulted by any of the Defendants. Indeed, neither Officer Hirst's nor Lt. Armes actions, as described by Greene, consisted of conduct involving any physical contact between either of these officers and Greene. The only physical contact alleged by Greene is that Officer Uzley and Officer Gadsbury strip-searched him. However, Greene's claims against Officer Uzley and Officer Gadsbury do not appear to be based on the fact of the strip-search itself, but rather that Officer Uzley strip-searched him in front of Officer Hirst and that Officer Gadsbury stared at Greene's private parts. Even so, the Court concludes that these two isolated incidents are not sufficient to implicate the Eighth Amendment. Each officers' actions occurred briefly on a single occasion, and hence were too isolated and fleeting to constitute the kind of objectively serious harm – the "unnecessary and wanton infliction of pain," *Rhodes*, 452 U.S. at 345-46 – that the Eighth Amendment was designed to prevent. Cf. *Rowe v. Bergh*, No. 2: 08-CV-162, 2008 WL 4239018, at *4-5 (W.D. Mich. Sept. 9, 2008) ("Although severe or repetitive sexual abuse certainly could qualify under this standard, a single incident of objectionable sexual touching does not meet the objective component of an Eighth Amendment claim."). *See also Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, 215 F. 3d 1326 (6th Cir. 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment) (unpublished decision).

Finally, 42 U.S.C. § 1997e(e) provides, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The United States Court of Appeals for the Sixth Circuit has repeatedly found Eighth Amendment claims for monetary relief precluded by 42 U.S.C. § 1997e(e) absent a showing of physical injury. *See Jennings v. Weberg,* No. 2:06–CV–235, 2007 WL 80875, at *3 (W.D. Mich. Jan.8, 2007) (collecting cases). "[E]ven though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward." *Flanory v. Bonn,* 604 F.3d 249, 254 (6th Cir.2010). Greene has not alleged that he suffered any physical injuries from any of the harassment he claims to have experienced.

For all of these reasons, Greene's Eighth Amendment claims based upon his allegations of general and sexual harassment must be dismissed for failure to state a claim.

Turning to Greene's Eighth Amendment claims based on his allegations of deliberate indifference to his serious medical needs, he seeks to bring these claims against Dr. Parsons, whom he identifies as the Chief Psychologist at USP-McCreary, and an unidentified nurse with USP-McCreary's medical department. Specifically, with respect to Dr. Parsons, he alleges that, upon his arrival at USP-McCreary, he was told by Dr. Jones that she would speak with her supervisor, Chief Psychologist Dr. Parsons, to arrange for Greene to speak with an outside psychologist. However, although Dr. Jones advised Greene to check the inmate call-out daily for his meeting with an outside psychologist, in two months, Greene's name never showed up. He further alleges that, in late April/early May 2018, he was visited by two sexual abuse advocates from ADONTA (a non-profit organization), who told him that they had some brochures and documents to give him, but that, because policy prohibited them from giving Greene anything

directly, they had given the materials to Dr. Parsons to give to Greene. However, Greene claims that Dr. Parsons never gave him anything. He states that he asked Dr. Parsons about it and she told him to come by the psychology department to pick up the materials. Greene claims that, when he arrived at the psychology department, Dr. Parsons "fraudulently provided plaintiff a handbook that she had printed off-line from the Center for Woman and Families in Louisville, Kentucky." Greene claims that he then emailed Dr. Parsons and accused her of withholding the material, which he stated constitutes staff misconduct. He states that Dr. Parsons then emailed Greene back and told him that he could come pick up the "real material." He alleges that Dr. Parsons' conduct constitutes deliberate indifference to Greene's mental health needs.

With respect to the unidentified nurse, Greene alleges that, in May 2018, he went to USP-McCreary's medical department for treatment of the burn injuries that he suffered at USP-Big Sandy. He claims that, after he told the nurse that the injuries were the result of staff misconduct, the nurse "ended the examination and refused to take pictures," but instructed Greene to treat the burns with Tolfnatte cream that could be purchased from the commissary. He claims that the nurse's conduct constitutes deliberate indifference to his serious medical needs.

"In order to state a cognizable claim [under the Eighth Amendment] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Estelle*, 429 U.S. at 106. Such a claim involves a two-part inquiry with both an objective and a subjective component: (1) the plaintiff must allege a sufficiently serious medical need, and (2) the plaintiff must allege facts that "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (quoting *Comstock v. McCrary*, 273 F.3d 693, 607 (6th Cir. 2001)).

Even assuming that Greene sufficiently alleges that his medical needs were serious enough to implicate constitutional concerns, to establish "deliberate indifference" to Greene's condition, Greene must allege facts sufficient to show that each defendant acted with a knowing and culpable disregard for his well-being, demonstrated by circumstances such as "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104; *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

Glaringly absent from Greene's complaint are allegations even suggesting that any of these providers were aware of any specific medical condition yet, through his or her actions, chose to consciously and deliberately disregard a serious risk to Greene's health. Rather, Greene's claims against Dr. Parsons regarding an alleged delay in Greene's visit with an outside psychologist are not based on any conduct by Dr. Parsons, but rather assurances that Greene claims to have received from Dr. Jones that such a visit would be forthcoming. To the extent that Greene's claims are based on Dr. Jones' statements that she had spoken with her supervisor (Dr. Parsons) regarding the visit with an outside psychologist, supervisory liability is unavailable in a *Bivens* action: "[i]n a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Iqbal*, 556 U.S. at 677 (2009). *See also Ziglar*, 137 S.Ct. at 1860. To be sure, "[p]laintiff must state a plausible constitutional violation against each individual defendant—the collective acts of defendants cannot be ascribed to each individual defendant," *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012) (citations omitted).

Moreover, the allegations of the complaint establish that Greene was receiving treatment for his conditions. For example, even if his claim that Dr. Parsons did not initially provide Greene with the specific materials that were left for him by the ADONTA advocates were true,

he admits that she did provide him with a handbook from the Center for Woman and Families in Louisville, Kentucky. In addition, according to his own allegations, the USP-McCreary nurse advised him to treat his burns with Tolfnatte cream that he could purchase from the commissary. While Greene may have been dissatisfied with the level of counseling provided by Dr. Parsons and/or the medical treatment provided for his burns by the USP-McCreary nurse, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). *See also Durham v. Nu'Man*, 97 F. 3d 862, 868-69 (6th Cir. 1996). Even "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F. 3d at 703.

For all of these reasons, Greene has failed to state an Eighth Amendment claim for which relief may be granted against either Dr. Parsons or the USP-McCreary nurse based on his allegations of inadequate care for his serious health needs. Thus, these claims will be dismissed.

### C.   Greene's Remaining Claims

Although Greene identifies Special Agent McMahan from the DOJ's Office of the Inspector General as a Defendant, his only allegation against Special Agent McMahan is that, during an interview with McMahan in February 2018, Greene asked Agent McMahan why it had taken him so long to show up to meet with Greene about his sexual misconduct claims and McMahan responded "this is the federal government everything moves slow." However, this allegation, even if true, alleges negligence (at best) and is far from sufficient to allege that

McMahan violated Greene's constitutional rights. Accordingly, Greene's claims against Agent McMahan will be dismissed.

Next, in connection with the incident in which he claims that Lt. Armes threatened Greene with sexual assault, Greene alleges that this incident constitutes "calculated torture" and was the result of a conspiracy among Lt. Meade, Lt. Kuntzman, Lt. Armes, USP-Big Sandy's Captain, Warden Kizziah, Officer Mitchell, and John Does, as these Defendants all had a duty to protect Greene from the use of excessive force, cruel and unusual punishment and torture and/or report that it had occurred. Greene alleges that, by failing to do so, each Defendant became "complicit conspirators" in a conspiracy to violate Greene's civil and constitutional rights.

However, to state a claim for a *Bivens* conspiracy, Greene must allege "an agreement between two or more persons acting in concert to deprive a person of his constitutional rights, and an overt act done in furtherance of the conspiracy causing injury." *Uduko v. Cozzens*, 975 F.Supp.2d 750, 757 (E.D. Mich. 2013)(citing *Hooks v. Hooks,* 771 F.2d 935, 943–44 (6th Cir.1985)). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Greene fails to allege the existence of any agreement among Lt. Meade, Lt. Kuntzman, Lt. Armes, USP-Big Sandy's Captain, Warden Kizziah, Officer Mitchell, and John Does to violate Greene's constitutional rights with *any* specificity, nor does he otherwise allege facts to support such a claim. Rather, his claim is based solely on his conclusory allegation that a conspiracy existed. At best, Greene alleges conduct by one individual – Lt. Armes – and then asserts, based on nothing but his own conclusions, that these actions were part of a conspiracy to "torture" Greene.

However, such vague and conclusory allegations unsupported by facts are insufficient to state a conspiracy claim. *Uduko*, 975 F.Supp.2d at 757.

Nor does Greene allege any other facts sufficient to state an Eighth Amendment claim against either Lt. Meade, USP-Big Sandy's Captain, Warden Kizziah, Officer Mitchell, or John Does based on a "failure to protect" theory. To state a failure-to-protect civil rights claim, an inmate must allege that a prison official was aware of a substantial risk that the plaintiff would suffer serious harm and knowingly disregarded that risk. *Johnson v. Slone*, No. 7:16-cv-274-KKC, 2018 WL 1402376, at *3 (E.D. Ky. 2018). Greene simply does not allege facts showing that any of these individuals were actually aware of any risk that Greene would suffer serious harm and yet knowingly disregarded that risk. Rather, Greene's allegations against these Defendants are all conclusory in nature, which are insufficient to state a claim for relief.

Indeed, Greene's claims against DOJ Inspector General Michael Horowitz, the Director of the Bureau of Prisons, Warden Kizziah, Associate Warden Gomez, an unidentified USP-Big Sandy Captain, and Lt. Meade are not based upon any allegations of conduct by these individuals, but appear to be based solely on their roles of supervisors within their respective organizations. However, in order to recover against a given defendant in a *Bivens* action, the plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation of federal rights." *Nwaebo*, 83 F. App'x at 86 (*citing Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976)). The mere fact of supervisory capacity is not enough: respondeat superior is not an available theory of liability. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981). *See also Iqbal*, 556 U.S. at 677 (2009); *Ziglar*, 137 S.Ct. at 1860. Moreover, to the extent that Greene alleges that any of these Defendants failed to adequately respond to his complaints or grievances, *Bivens* liability may not be imposed simply because a supervisor denied an administrative

grievance or failed to act based upon information contained in a grievance. *Nwaebo*, 100 F. App'x at 369 (citing *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999)).

For all of these reasons, Greene fails to state a claim against DOJ Inspector General Michael Horowitz, the Director of the Bureau of Prisons, Warden Kizziah, Associate Warden Gomez, an unidentified USP-Big Sandy Captain, Lt. Meade or Officer Mitchell. Accordingly, these claims will be dismissed.

In summary, after reviewing the allegations of Greene's complaint, the Court finds that a response is required from the following Defendants with respect to the following claims: 1) the United States of America with respect to Greene's FTCA claims; 2) Officer Amanda Hirst, Officer Uzley, Officer Ferguson, and Lt. Kuntzman (in their individual capacities only) with respect to Greene's First Amendment retaliation claims; 3) Officer Ferguson and Lt. Kuntzman (in their individual capacities only) with respect to Greene's Eighth Amendment excessive force claims; and 4) Lt. Kuntzman and Lt. Armes (in their individual capacities only) with respect to Greene's Eighth Amendment failure to protect claims.

Greene's remaining claims, including all of his claims made against the Defendants in their official capacities, will be dismissed. The following Defendants will be dismissed from this action: the U.S. Department of Justice/Office of Inspector General, the Bureau of Prisons, Michael Horrowitz (Inspector General), the Director of the Bureau of Prisons, Gregory A. Kizziah (Warden, USP-McCreary), Special Agent McMahan (Office of Inspector General), Gomez (Associate Warden, USP-McCreary), Captain at USP-Big Sandy, Lt. Meade (USP-Big Sandy), Officer Mitchell (USP-Big Sandy), Officer Gadsbury (USP-McCreary), Dr. Parsons (USP-McCreary), John Doe #1 and #2, and Jane Doe #1 and #2.

Because Greene is proceeding *in forma pauperis*, the United States Marshals Service ("USMS") will serve the summons and complaint on Greene's behalf.  Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d).

## IV.

Also pending before the Court are two motions filed by Greene.  In his "motion for judicial intervention" [R. 10], Greene refers to two difference incidents in which he claims that other inmates were beaten by prison staff at USP-McCreary.  As relief, he requests that the Court "adequately address the serious issues complained of herein."  [R. 10]

Pursuant to 28 U.S.C. § 1654, "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."  28 U.S.C. § 1654.  However, the United States Court of Appeals for the Sixth Circuit has consistently interpreted § 1654 "as prohibiting pro se litigations from trying to assert the rights of others."  *Olagues v. Timken*, 908 F.3d 200 (6th Cir. 2018) (collecting cases).  *See also Crawford v. United States Dep't of Treasury,* 868 F.3d 438, 455 (6th Cir. 2017) ("Generally, a plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").  As explained by the Sixth Circuit, the rule against non-lawyer representation applies for good reason, as it "protects the rights of those before the court by preventing an ill-equipped layperson from squandering the rights of the party he purports to represent."  *Olagues*, 908 F.3d 200 (quoting *Bass v. Leatherwood*, 788 F.3d 228, 230 (2015)).  Thus, "while a pro se plaintiff can 'squander' his own rights, he cannot waste the rights of other persons or entities."  *Id*.

For these reasons, Greene may only pursue claims in this case made on his own behalf. As his "motion for judicial intervention" [R. 10] seeks relief based on potential claims of other inmates, this motion will be denied.

In his "motion to appoint counsel and/or motion for appointment of special master or protective order," [R. 11] Greene makes additional allegations against various prison staff at USP-McCreary related to a sexual assault that he claims occurred in June 2019. He claims to fear for his physical safety and requests that the Court appoint him counsel to decide if he should "just dismiss the suit to save my life. Also, to ensure that I am represented properly and protected from the abuser mention herein." [R. 11]

First, the Court notes that the allegations made by Greene in his motion to appoint counsel are completely unrelated to the claims being pursued in this case. Indeed, the only remaining Defendants in this case are employed at a different federal facility (USP-Big Sandy) and none of the individuals identified in Greene's motion were previously identified by Greene as Defendants in this action. Although Greene is not requesting to amend his complaint to include these claims, even if he had, his request would be denied, as such a request does not comply with the requirements of the joinder provisions of Fed. R. Civ. P. 20(a)(2)(A) (among the relevant requirements that would allow a plaintiff to join one claim against one defendant and a different claim against a different defendant in one lawsuit is that the claims arise out of the same occurrence or series of occurrences). *See* Fed. R. Civ. P. 20(a)(2)(A). Moreover, to the extent that Greene seeks some sort of injunctive relief against officials at USP-McCreary, he has now been transferred to USP-Canaan located in Waymart, Pennsylvania, thus any such claims are moot. *See, e.g.*, *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (finding that the inmate's facility transfer mooted his request for injunctive relief where the inmate's claims were directed

specifically towards his prior facility's policies and procedures); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("However, to the extent [the plaintiff] seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that [allegedly violated his constitutional rights]").

Regardless, 28 U.S.C. § 1915(e)(1) authorizes a federal court to appoint counsel to represent a *pro se* party in civil litigation, but only in truly exceptional circumstances. *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003). When considering whether to grant such a request, the court considers the complexity of the case, the movant's likelihood of success on the merits of the claim, and the ability of the plaintiff to represent himself competently. *Cleary v. Mukaskey*, 307 F. App'x 963, 965 (6th Cir. 2009). In this case, the claims asserted by Greene is not unduly complex, the viability of his claims is speculative at this juncture, and he has presented his claims with adequate clarity thus far. The Court has considered the *Lanier* factors and concludes that this case does not present the kind of extraordinary circumstances which would warrant the appointment of counsel for the plaintiff. Thus, Greene's motion will be denied.

Accordingly, **IT IS ORDERED** that:

1.     The Clerk of the Court shall **SUBSTITUTE** the "United States of America" for the United States Department of Justice/OIG and the Bureau of Prisons as a Defendant in this action.

2.     The following claims made in Greene's Amended Complaint [R. 6, 6-1] **REMAIN PENDING** and will be served in accordance with the instructions below: 1) Greene's FTCA claim against the United States; 2) Greene's First Amendment retaliation claims against Officer Amanda Hirst, Officer Uzley,

Officer Ferguson, and Lt. Kuntzman (in their individual capacities); 3) Greene's Eighth Amendment excessive force claims against Officer Ferguson and Lt. Kuntzman (in their individual capacities); and 4) Greene's Eighth Amendment failure to protect claims against Lt. Kuntzman and Lt. Armes (in their individual capacities).

3.      The remainder of Greene's complaint [R. 6, 6-1], including all claims made against Defendants in their official capacities, is **DISMISSED WITHOUT PREJUDICE**.

4.      The following are **DISMISSED** as Defendants: the U.S. Department of Justice/Office of Inspector General, the Bureau of Prisons, Michael Horrowitz (Inspector General), the Director of the Bureau of Prisons, Gregory A. Kizziah (Warden, USP-McCreary), Special Agent McMahan (Office of Inspector General), Gomez (Associate Warden, USP-McCreary), Captain at USP-Big Sandy, Lt. Meade (USP-Big Sandy), Officer Mitchell (USP-Big Sandy), Officer Gadsbury (USP-McCreary), Dr. Parsons (USP-McCreary), John Doe #1 and #2, and Jane Doe #1 and #2.

5.      Greene's "motion for judicial intervention" [R. 10] is **DENIED**.

6.      Greene's "motion to appoint counsel and/or motion for appointment of special master or protective order" [R. 11] is **DENIED**.

7.      To the extent that Greene's "request for current status of this action," seeks affirmative relief from the Court and, accordingly has been docketed as a motion for administrative purposes [R. 13], that motion is **DENIED**.

8. The Deputy Clerk shall prepare six (6) "Service Packets" for service upon Defendants the United States of America, Officer Amanda Hirst, Officer Uzley, Officer Ferguson, Lt. Kuntzman, and Lt. Armes. Each Service Packet shall include:

   a. a completed summons form;

   b. the complaint [R. 6];

   c. the Order granting Plaintiff in forma pauperis status [R. 9];

   d. this Order; and

   e. a completed USM Form 285.

9. The Deputy Clerk shall deliver the Service Packets to the USMS in Lexington, Kentucky and note the date of delivery in the docket.

10. The USMS shall serve the United States of America by sending a Service Packet by certified or registered mail to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky; and the Office of the Attorney General of the United States in Washington, D.C.

11. The USMS shall personally serve Defendants Officer Amanda Hirst, Officer Uzley, Officer Ferguson, Lt. Kuntzman, and Lt. Armes at USP-Big Sandy in Inez, Kentucky through arrangement with the Federal Bureau of Prisons.

12. Greene must immediately advise the Clerk's Office of any change in his current mailing address. **Failure to do so may result in dismissal of this case**.

13. If Greene wishes to seek relief from the Court, he must do so by filing a formal motion sent to the Clerk's Office. Every motion Greene files must include a written certification that he has mailed a copy of it to the Defendants or their

counsel and state the date of mailing. **The Court will disregard letters sent to the judge's chambers or motions lacking a certificate of service.**

This 22d day of October, 2019.

Gregory F. Van Tatenhove
United States District Judge