UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| MICHAEL GREENE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:19-cv-00024-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| UNITED STATES, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

**\*\*\* \*\*\* \*\*\* \*\*\***

Plaintiff Michael Greene is a federal inmate currently confined at the United States

Penitentiary ("USP")-Canaan in Waymart, Pennsylvania.  Proceeding without an attorney, Mr.

Greene filed an amended complaint alleging claims against the United States and officials at

USP-Big Sandy and USP-McCreary, both of which are located within this judicial district.  [R. 6,

6-1.][1]  After initial screening of Mr. Greene's amended complaint pursuant to 28 U.S.C. § 1915,

1915A, several of Mr. Greene's claims were dismissed and the Defendants against whom those

claims were alleged (including all of the USP-McCreary Defendants) were dismissed from this

action.  [R. 14.]  However, the Court directed that that summons be issued and served on the

following Defendants to respond to the following claims: 1) Mr. Greene's claim against the

United States of America brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2670 *et*

*seq.* ("FTCA"); 2) Mr. Greene's First Amendment retaliation claims brought pursuant to *Bivens*

---

[1] Mr. Greene's original complaint was not filed on a form approved for use by this Court as required by the Court's
Local Rules and failed to comply with the requirement of Federal Rule of Civil Procedure 8 that a complaint set
forth its claims in a manner that is "short and plain."  *See* Fed. R. Civ. P. 8(a).  [R. 1.]  Although the Court provided
him with an opportunity to file an amended complaint using the Court's form, as well as with instructions on how to
properly plead his claims, [R. 5,] Mr. Greene's "amended complaint" consisted of the completed form complaint [R.
6], which attached and incorporated Mr. Greene's original deficiently-pled complaint by reference.  [R. 6-1.]  Thus,
Mr. Greene's amended complaint suffered from many of the same deficiencies as his original complaint.

*v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), against Defendants Amanda Hirst, Brent Ousely,[2] Daniel Ferguson, and Joseph Kuntzman; 3) Mr. Greene's Eighth Amendment *Bivens* claim alleging that Ferguson used excessive force when restraining Mr. Greene in January 2018; 3) Mr. Greene's Eighth Amendment *Bivens* claim alleging that Mr. Kuntzman used excessive force through the improper use of oleoresin capsicum ("OC") spray while Mr. Greene was being extracted from his cell on February 9, 2018; 4) Mr. Greene's Eighth Amendment *Bivens* claim alleging Mr. Kuntzman and Jason Armes failed to protect Mr. Greene by leaving him in a four-point restraints without properly decontaminating him after he was exposed to OC spray during the February 9, 2018 incident.  [R. 14]

The United States, Mr. Kuntzman, Ms. Hirst, Mr. Ferguson, and Mr. Ousley, by and through counsel, have filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. [R. 48.][3]  Mr. Greene has filed a response [R. 81] and the Defendants have filed a reply. [R. 82.] Thus, this matter has been fully briefed and is ripe for review.

# I

The events related to Mr. Greene's remaining claims began on November 2017, when Mr. Greene alleges that Ms. Hirst watched him shower, which he claims female officers are not allowed to do.  [R. 1 at 3.]  Mr. Greene further alleges that, in December 2017, Mr. Ousley strip-searched him while Ms. Hirst watched.  *Id.*  Mr. Greene claims that Ms. Hirst and Mr. Ousley's conduct violates the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601 *et seq.*, and he filed a PREA complaint against them in early January 2018.  *Id.*

---

[2] Mr. Greene incorrectly referred to Mr. Ousley in his amended complaint as "Uzley," but Defendants confirm that the correct spelling of his name is Mr. Ousley.  [R. 6; R. 48-1.]

[3] Mr. Armes has not filed an answer or otherwise filed a response to the amended complaint against him.  The adequacy of the service of summons on Mr. Armes will be addressed more fully herein.  For purposes of this Memorandum and Order, unless otherwise specified, the collective term "Defendants" refers to those Defendants on whose behalf the pending dispositive motion was filed (specifically, the United States, Mr. Kuntzman, Ms. Hirst, Mr. Ferguson, and Mr. Ousley).

Mr. Greene then alleges that he was retaliated against as a result of his PREA complaint through threats and intimidation by Ms. Hirst and Mr. Ousley. *Id.* at 4. As part of this retaliation, he claims that Ms. Hirst orchestrated an incident sometime during the last week of January 2018, during which Ms. Hirst asked Mr. Greene whether he filed a PREA complaint against her in the presence of Mr. Ferguson, who then accused Mr. Greene of threatening Ms. Hirst and restrained him in a manner that Mr. Greene alleges constituted an excessive use of force. *Id.* Mr. Greene also alleges that Ms. Hirst, Mr. Ferguson, and two other prison officers filed a false incident report alleging that Mr. Greene had threatened Ms. Hirst. *Id.* These factual allegations form the basis of Mr. Greene First Amendment retaliation claim against Ms. Hirst, Mr. Ousley, and Mr. Ferguson, as well as an Eighth Amendment claim alleging that Mr. Ferguson used excessive force in restraining Mr. Greene.

Next, Mr. Greene alleges that, on February 9, 2018, he notified Mr. Kuntzman of "serious staff misconduct" related to Ms. Hirst and Mr. Ousley. *Id.* That same day, Mr. Greene and his cell mate covered the window of their cell, which they refused to remove. *Id.* at 5. According to Mr. Greene, they did not cover the window to be "disruptive or threatening," but to get information regarding whether someone from the Department of Justice was coming to see them to discuss the PREA complaint. *Id.* Mr. Greene alleges that Mr. Kuntzman retaliated against him for the staff misconduct complaint by using Mr. Greene's covering of the window as justification for employing a cell extraction team to remove Mr. Greene and his cell mate from their cell involuntarily. *Id.* During the removal of Mr. Greene from his cell, Mr. Greene claims that Mr. Kuntzman used excessive amounts of OC spray, which burned his skin. *Id.* Based on these allegations, Mr. Greene brings a First Amendment retaliation claim against Mr. Kuntzman and an

Eighth Amendment claim against Mr. Kuntzman alleging that the use of the OC spray in these circumstances constitute the use of excessive force against him.

After Mr. Greene was sprayed with OC spray, he was taken to a shower area to be decontaminated.  *Id.*  However, Mr. Greene claims that the water was too hot (which he claims was done intentionally by Mr. Kuntzman or other staff), so Mr. Greene was not properly decontaminated.  *Id.*  He then claims that Mr. Kuntzman refused to supply Mr. Greene with shoes, intentionally walked him down a hallway barefoot through human feces and urine, and then placed him in hand restraints.  *Id.* at 6.  Mr. Greene states that he again covered his window (which he claims was necessary so that a superior officer would be summoned) to request shoes.  *Id.* However, he claims that Mr. Kuntzman retaliated further by moving Mr. Greene to the medical department and placing him in four-point restraints.  *Id.*  Mr. Greene alleges that Mr. Armes later did a wellness check on him, threatened him with sexual assault and refused to remove the restraints, notwithstanding Mr. Greene's complaints that his body was still burning because he had not been properly decontaminated after being sprayed with OC spray.  *Id.*  Based on these allegations, Mr. Greene alleges that Mr. Kuntzman and Mr. Armes failed to protect him in violation of the Eighth Amendment.

Based on all of these allegations, Mr. Greene brings an FTCA claim against the United States alleging that various Bureau of Prisons ("BOP") policies regarding PREA reporting, investigation of PREA complaints, sexual misconduct, the use of OC spray, and the use of restraints are too vague, reckless, inadequate, negligent, and are otherwise faulty.  [R. 6-1 at 2, 3, 5–8]

Defendants the United States, Joseph Kuntzman, Brent Ousely, Daniel Ferguson, and Amanda Hirst, by counsel, have filed a motion to dismiss or, in the alternative, motion for

summary judgment on Mr. Greene's remaining claims.  [R. 48.]  With respect to Mr. Greene's FTCA claim against the United States, Defendants argue that this claim must be dismissed for failure to comply with the "presentment" requirement of 28 U.S.C. § 2675(a), which permits the exercise of jurisdiction over a claim against the United States only if it has already been presented to the appropriate federal agency for administrative settlement and the agency has denied the request.  28 U.S.C. § 2675(a).  [R. 48-1 at 9.]

With respect to Mr. Greene's constitutional *Bivens* claims against the individual Defendants, Defendants argue that those claims must also be dismissed because Mr. Greene has failed to exhaust his administrative remedies with respect to those claims, as is required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e.  *Id.* at 10.  In the alternative, Defendants argue that the Court should decline to imply a remedy for retaliation under the First Amendment, thus Mr. Greene's First Amendment retaliation claims brought pursuant to *Bivens* must be dismissed.  *Id.* at 13.  With respect to Mr. Greene's Eighth Amendment claims alleging the use of excessive force, Defendants argue that Mr. Greene cannot demonstrate that either Mr. Ferguson or Mr. Kuntzman used excessive force against him.  *Id.* at 18.  Finally, Defendants argue that they are entitled to qualified immunity with respect to Mr. Greene's claims.  *Id.* at 22.

## II

Defendants move to dismiss Mr. Greene's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Id.* at 5.  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint.  *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014).  When addressing a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all "well-pleaded facts" in the complaint.

*D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Because Mr. Greene is proceeding without the benefit of an attorney, the Court reads his complaint to include all fairly and reasonably inferred claims. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437–38 (6th Cir. 2012).

Here, Defendants move both to dismiss and for summary judgment, attaching and relying upon declarations extrinsic to the pleadings in support of their motion. [R. 48.] Thus, the Court will treat Defendants motion to dismiss the complaint as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010); *see also Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (where defendant moves both to dismiss and for summary judgment, plaintiff is on notice that summary judgment is being requested, and the court's consideration as such is appropriate where the nonmovant submits documents and affidavits in opposition to summary judgment).

A motion under Rule 56 challenges the viability of another party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986). A party moving for summary judgment must establish that, even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that the party is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994).

In order to defeat a properly supported motion for summary judgment, the party opposing the motion may not "rest upon mere allegation or denials of his pleading," but must present affirmative evidence supporting his claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986). However, if the responding party's allegations are so clearly contradicted by the

record that no reasonable jury could adopt them, the Court need not accept them when determining whether summary judgment is warranted.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim.  *Anderson*, 477 U.S. at 251.

a

Mr. Greene's FTCA claim against the United States alleges that various BOP policies, including its policies related to PREA reporting, investigation of PREA complaints, sexual misconduct, the use of OC spray, and the use of restraints, are inadequate, grossly negligent and present a danger to inmates.  [R. 1.]  Defendants argue that Mr. Greene's FTCA claim must be dismissed because Mr. Greene failed to present it to the BOP for administrative settlement prior to filing his lawsuit, as is required by 28 U.S.C. § 2675(a).  [R. 48 at 6.]

The FTCA is a limited waiver of the federal government's sovereign immunity which permits an action against the United States for negligent or wrongful acts or omissions of its employees while acting within the scope of their employment.  *See* 28 U.S.C. § 1346(b)(1); *see also Fitch v. United States,* 513 F.2d 1013, 1015 (6th Cir. 1975); *United States v. Orleans,* 425 U.S. 807, 813 (1975).  The FTCA is the exclusive remedy for tort actions against the federal government, its agencies, and its employees.  28 U.S.C. § 2679.  A waiver of the United States' sovereign immunity, such as the limited waiver provided by the FTCA, is to be "strictly construed, in terms of its scope, in favor of the sovereign."  *Lane v. Pena*, 518 U.S. 187, 192 (1996); *see also Jackson v. United States*, 751 F.3d 712, 717 (6th Cir. 2014); *Stocker v. United States*, 705 F.3d 225, 230 (6th Cir. 2013) ("Under well-established and familiar principles of sovereign immunity, the United States may not be sued without its consent, and the terms of this consent define the jurisdiction of the courts to entertain a suit against the Government.") (citation omitted).

The FTCA places several conditions on the limited waiver of the United States' immunity, the first being the exhaustion of the plaintiff's administrative remedies with the appropriate federal agency. *See Ellison v. United States*, 531 F.3d 359, 361 (6th Cir. 2008); *see also Blakely v. United States*, 276 F.3d 853, 864 (6th Cir. 2002) ("The government has waived its sovereign immunity to suits for tort actions under the FTCA, but only insofar as the plaintiff has exhausted his administrative remedies.") (citations omitted); *Lundstrum v. Lyng*, 954 F.2d 1142, 1145 (6th Cir. 1991) ("A prerequisite to suit under the FTCA…is the exhaustion by the plaintiff of administrative remedies."). Specifically, 28 U.S.C. § 2675(a) provides that "[a]n action *shall not* be instituted upon a claim against the United States…*unless the claimant shall have first presented the claim to the appropriate Federal agency*..." *See* 28 U.S.C. § 2675(a) (emphasis added). The United States Supreme Court has noted that this language is "unambiguous" and Courts "are not free to rewrite the statutory text." *McNeil v. United States*, 508 U.S. 106, 111 (1993); *see also Ellison*, 531 F.3d at 361–62 ("Claimants, remember, *must* present their claims to the relevant agency before bringing suit in federal court.") (emphasis in original); *Myers v. United States*, 526 F.3d 303, 305 (6th Cir. 2008). Thus, a plaintiff's complaint that is filed before his or her claim is presented to the appropriate agency is filed too early and must be dismissed. *McNeil*, 508 U.S. at 111.

Section 2675(a)'s requirement that an administrative claim be filed as a prerequisite to filing a civil action under the Federal Tort Claims Act is "not capable of waiver or subject to estoppel." *Garrett v. United States*, 640 F.2d 24, 26 (6th Cir. 1981) (citations omitted); *see also Bumgardner v. United States*, 469 F. App'x 414, 417 (6th Cir. 2012) (Section 2675(a)'s exhaustion requirement is jurisdictional) (citing *Joelson v. United States,* 86 F.3d 1413, 1422 (6th Cir. 1996)); *Mills v. United States*, 127 F.3d 1102 (6th Cir. 1997) ("The filing of an administrative claim is a jurisdictional prerequisite to the filing of a complaint under the FTCA."). Thus, if the plaintiff did

not both file an administrative claim and receive a denial from the agency before filing suit, the FTCA mandates the dismissal of a suit against the United States. *McNeil*, 508 U.S. 106.

Defendants seek dismissal of Mr. Greene's FTCA claim, as the BOP has no record of Mr. Greene submitting an administrative tort claim with respect to his claims. [R. 48-1 at 6–8.] In response, Mr. Greene admits that he did not submit an administrative tort claim to the BOP as is required but argues that he should be excused from § 2675(a)'s presentation requirement because staff at USP-Big Sandy and USP-McCreary would not provide him with a Standard Form 95 (the administrative tort claim form) on which to file his claim with the BOP. [R. 81 at 1, 8–10.] Specifically, Mr. Greene claims that, at USP-Big Sandy, he twice requested "Tort Claims Act" forms from Counselor Lockwood, but Mr. Lockwood claimed that he did not have any forms with him at the time. *Id.* at 3. Mr. Greene then states that, after he was transferred to USP-McCreary, he asked his counselor at USP-McCreary for an FTCA form and his counselor refused after Mr. Greene told him why he was requesting it. *Id*. at 8.[4] According to Mr. Greene, his counselors' refusal to provide him with an administrative tort form renders the administrative process unavailable to him, thus he should be excused from compliance with § 2675(a)'s administrative exhaustion requirement.

However, an administrative tort claim need not be presented on any specific form. Rather, a person presenting a tort claim to an administrative agency under the FTCA must: "1) give written notice of a claim sufficient to enable the agency to investigate the claim and 2) place a value (or 'sum certain') on the claim." *Glarner v. U.S., Dep't of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994); *see also Blakely*, 276 F.3d at 864 ("A claim submitted to the proper administrative agency is considered sufficient to satisfy the exhaustion requirement if it is a 'written notification

---

[4] According to Defendants, Mr. Greene was transferred to USP-Canaan on September 3, 2019. Mr. Greene does not indicate whether he requested any administrative tort claim forms from staff at USP-Canaan.

of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss

of property, personal injury, or death.'") (quoting *Lundstrum*, 954 F.2d at 1145).

The relevant regulatory provision governing administrative claims under the FTCA

provides, in part, that:

> For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim
> shall be deemed to have been presented when a Federal agency receives from a
> claimant…, an executed Standard Form 95 *or other written notification* of an
> incident, accompanied by a claim for money damages in a sum certain for injury
> to or loss of property, personal injury, or death alleged to have occurred by reason
> of the incident...

*See* 28 C.F.R. § 14.2 (emphasis added).

Moreover, the applicable BOP Program Statement, Program Statement 1320.06, <u>Federal

Tort Claims Act</u>, specifically explains that, while a claim may be filed on an SF-95 Form, "[a]

claim may also be filed *without* an SF-95 if the claimant provides all necessary information."  *See*

BOP Program Statement 1320.06, § 7(b).   Thus, even assuming the truth of Mr. Greene's

allegations that his requests for an SF-95 Form were denied by prison staff, the failure to provide

Mr. Greene with a form did not render the administrative process for filing a tort claim

"unavailable" to him, as no specific form is required to file a claim.

Notably, Mr. Greene does not seek equitable tolling of the FTCA's limitations period

provided by 28 U.S.C. § 2401(b), *see United States v. Kwai Fun Wong*, 575 U.S. 402, 405 (2015),

but instead requests to be excused from the presentation requirement altogether.   However, the

statutory text is clear that an action "*shall not be instituted*" unless the claim has first been

presented to the appropriate Federal agency.   28 U.S.C. § 2675(a) (emphasis added).   Equally clear

is the prior legal precedent requiring this Court to strictly construe the unambiguous requirement

of this statute.   *See, e.g., McNeil*, 508 U.S. at 112 ("The interest in orderly administration of this

body of litigation is best served by adherence to the straightforward statutory command."); *Ellison*,

531 F.3d at 361–62.[5]  Section 2675(a) plainly required Mr. Greene to file a claim with the BOP prior to filing his lawsuit against the United States.  He did not.  Thus, under the unambiguous language of the statute, his FTCA claim must be dismissed.

**b**

In his amended complaint, Mr. Greene alleges that he was retaliated against by Ms. Hirst, Mr. Ousley, and Mr. Ferguson because he filed a PREA complaint against Ms. Hirst and Mr. Ousley.  [R. 6; R. 6-1.]  Mr. Greene also claims that Mr. Kuntzman retaliated against him because of a staff misconduct "notice" that he filed.  *Id.*  A retaliation claim is rooted in the First Amendment and alleges that the plaintiff suffered adverse consequences as a result of his or her exercise of a constitutional right.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  Constitutional claims against individual federal officers may be pursued (if at all) pursuant to *Bivens,* which held that an individual may "recover money damages for any injuries...suffered as a result of [federal] agents' violation of" his constitutional rights.  *See Bivens*, 403 U.S. at 397.

Defendants seek dismissal of Mr. Greene's First Amendment *Bivens* claims against them on the grounds that the United States Supreme Court has never recognized a First Amendment *Bivens* claim and its opinion in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), "squarely calls into question whether [Plaintiff] may bring a First Amendment claim under *Bivens* at all."  [R. 48-1 at 11.]  In light of *Abbasi* and recent Sixth Circuit precedent, the Court agrees with Defendants that there is no implied cause of action for a First Amendment retaliation claim against federal officers under *Bivens*.

---

[5] In *McNeil*, the Supreme Court found that strict adherence to the procedural requirements of the FTCA is required, even in cases involving complaints filed by *pro se* prisoners.  *McNeil*, 508 U.S. at 113.  ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed…, and have held that some procedural rules must give way because of the unique circumstance of incarceration…, we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.") (citations omitted).

As recently recognized by the United States Court of Appeals for the Sixth Circuit, while ["b]etween 1971 and 1980 in a trio of decisions, the Supreme Court recognized an implied cause of action by individuals who sued federal officers for violations of their constitutional rights…[s]ubsequent developments leave [the plaintiff] with a forbidding hill to climb." *Callahan v. Federal Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020) (citing *Carlson v. Green*, 446 U.S. 14 (1980); *Davis v. Passman*, 442 U.S. 228 (1979); *Bivens*, 403 U.S. 228 (1971)). Thus, "[w]hat started out as a presumption in favor of implied rights of action has become a firm presumption against them." *Id*. As observed by the Sixth Circuit, "[t]he Supreme Court has not recognized a new *Bivens* action in the 40 years since *Carlson*," despite repeated invitations to create one. *Id*.

In fact, the Supreme Court has repeatedly indicated that a First Amendment claim is *not* cognizable under *Bivens*. *See Reichle v. Howards*, 132 S. Ct. 2088, 2093 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("For while we have allowed a *Bivens* action to redress a violation of the equal protection component of the Due Process Clause of the Fifth Amendment…, we have not found an implied damages remedy under the Free Exercise Clause. Indeed, we have declined to extend *Bivens* to a claim sounding in the First Amendment.") (citations omitted); *Bush v. Lucas*, 462 U.S. 367, 387-89 (1983) (First Amendment retaliation claim was not cognizable under *Bivens*). While the Supreme Court has expressly acknowledged the availability of the remedy for claims arising under the Fourth and Eighth Amendment, it has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001).

In *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Supreme Court re-emphasized that

"expanding the *Bivens* remedy is now a 'disfavored' judicial activity," explaining:

> When a party seeks to assert an implied cause of action under the Constitution itself, just as when a party seeks to assert an implied cause of action under a federal statute, separation-of-powers principles are or should be central to the analysis. The question is "who should decide" whether to provide for a damages remedy, Congress or the courts? *Bush,* 462 U.S., at 380, 103 S.Ct. 2404.
>
> The answer most often will be Congress. When an issue "'involves a host of considerations that must be weighed and appraised,'" it should be committed to "'those who write the laws'" rather than "'those who interpret them.'" *Ibid.* (quoting *United States v. Gilman,* 347 U.S. 507, 512–513, 74 S.Ct. 695, 98 L.Ed. 898 (1954)).

*Id*. at 1857. Given these considerations, the Court explained that "a *Bivens* remedy will not be

available if there are 'special factors counselling hesitation in the absence of affirmative action

by Congress.'" *Id*. at 1857 (quoting *Carlson*, 226 U.S. at 18).

Post-*Abbasi*, courts have consistently declined to extend a *Bivens* remedy to First

Amendment claims. In *Callahan*, the Sixth Circuit specifically declined to recognize a new

*Bivens* action for First Amendment claims in prison. *Callahan*, 965 F.3d at 525. While

*Callahan* involved a prisoner's free speech rights in the context of his right to possess self-

created "sensuous" artwork, the Sixth Circuit noted that the Supreme Court had directly rejected

a First Amendment retaliation claim for federal employees in *Bush*, further pointing out "[t]hat

First Amendment claims have less purchase in prisons…would make it especially puzzling to

recognize a *Bivens* First Amendment claim for federal inmates but not for federal employees."

*Callahan*, 965 F.3d at 524.

Other Circuit Courts of Appeal have reached the same conclusion, including specifically

with respect to First Amendment retaliation claims. *See, e.g., Earle v. Shreves*, No. 19-6655, ---

F.3d ----, 2021 WL 896399, at *1 (4th Cir. Mar. 10, 2021) (declining to extend *Bivens* "to

include a federal inmate's claim that prison officials violated his First Amendment rights by retaliating against him for filing grievances"); *Mack v. Yost*, 968 F.3d 311, 314 (3d Cir. 2020) (declining to extend a *Bivens* remedy for prisoner's First Amendment retaliation claim); *Loumiet v. United States*, 948 F.3d 376, 378 (D.C. Cir.), *cert. denied*, 141 S. Ct. 180, 207 (2020) ("Consistent with the Supreme Court's marked reluctance to extend *Bivens* to new contexts, we hold that the First Amendment does not create…an implied damages action" against federal agency officials for retaliatory administrative enforcement action); *Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018) (declining to expand the *Bivens* remedy to First Amendment access to courts claim and Fifth Amendment procedural due process claim).  Likewise, this Court also concludes that *Bivens* should not be extended to imply a remedy for damages for Mr. Greene's First Amendment retaliation claim.

First, as in *Callahan*, Mr. Greene's First Amendment retaliation claim "arises in a context the Supreme Court has never countenanced before – and indeed once rejected."  *Callahan*, 965 F.3d at 523–24.  Moreover, the same "special factors [that] counsel hesitation" in recognizing a new *Bivens* claim identified by the Sixth Circuit in *Callahan* are likewise present here, including that the PLRA "'does not provide for a standalone damages remedy against federal jailers,' [suggesting] a considered decision not to extend a damages remedy to First Amendment violations."  *Id.* at 524 (quoting *Abbasi*, 137 S. Ct. at 1865).

In addition, there are "alternative, existing" processes available for protecting Mr. Greene's First Amendment interests, specifically the BOP's administrative remedy process.  *See Wilkie v. Robbins*, 551 U.S. 537, 550 (2007); *see also Malesko*, 534 U.S. 61, 69 (2001) ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.") (citation omitted); *Callahan*, 965

14

F.3d at 524 (recognizing the alternative method of relief for violations of prisoner's First

Amendment rights provide by the BOP grievance process).  While Mr. Greene has certainly

made his feelings regarding the inadequacy of the BOP's grievance process clear, in *Callahan*,

the Sixth Circuit recognized "the reality that our court has questioned the prison grievance

system's adequacy as a *Bivens* alternative."  *Callahan*, 965 F.3d at 525 (citing *Koprowski v.*

*Baker*, 822 F.3d 248, 256–57 (6th Cir. 2016)).  However, the Sixth Circuit declined to find that

these concerns justify extending a *Bivens* remedy, explaining that "the brief discussion [in

*Koprowski*] observed only that the grievance system's existence did not suffice to reject a *Bivens*

claim already in existence.  We said nothing about its relevance to the creation of a new *Bivens*

claim."  *Id*.

Another consideration is the risk of interference with prison administration, a

"inordinately difficult undertaking" that requires "expertise, planning, and the commitment of

resources," all tasks that fall "peculiarly within the province of the legislative and executive

branches."  *Id*. (quoting *Turner v. Safley*, 482 U.S. 78, 84–85 (1987)).  Thus, "[g]iven the array

of challenges facing prison administration and the complexity of those problems, 'separation of

powers concerns'…counsel in favor…of the judiciary not creating new causes of action in this

area."  *Id*. (quoting *Turner*, 482 U.S. at 85); *see also Earle*, --- F.3d ----, 2021 WL 896399 at *5

("Given the ease with which an inmate could manufacture a claim of retaliatory detention,

allowing a *Bivens* action for such claims could lead to an intolerable level of judicial intrusion

into an issue best left to correctional experts."); *Mack*, 968 F.3d at 324–25 ("First Amendment

retaliation claims brought by inmates should be approached 'with skepticism and particular care'

because such claims are easy to allege and difficult to prove…Because these types of claims are

'easily fabricated' and cannot be readily dismissed on the pleadings, we are hesitant to create a

category of cases which may well open the floodgates to litigation in this sphere.") (quoting *Bistrian v. Levi*, 912 F.3d 79, 96 (3d Cir. 2018)).

In addition, the Court recognizes that to extend *Bivens* liability in the First Amendment context presented here would impose substantial costs, in both time and money, upon individual officers and employees of the Federal Government. *See Abbasi*, 137 S. Ct. 1856. In the past, Congress has recognized the need to keep frivolous prisoner litigation in federal courts under control by passing the PLRA. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). Through the PLRA, Congress addressed the challenge of "ensuring that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203 (2007). Thus, expanding *Bivens* liability in this context requires consideration of the potential imposition of costs upon the government, as well as the risks of an increase of frivolous prisoner litigation. The Court finds that these factors further "counsel hesitation" in extending *Bivens* liability to First Amendment claims, as balancing these public policy concerns is more appropriately addressed by Congress rather than by the Court.

In his response to Defendants' motion, Mr. Greene acknowledges that "after *Abbasi*, courts around the nation have held that a First Amendment retaliation claim is not cognizable under *Bivens*." [R. 81 at 11–12.] Ignoring *Callahan*, Mr. Greene states that the Sixth Circuit has not addressed the issue. Mr. Greene then points to *Himmelreich v. Fed. Bureau of Prisons*, No. 4:10-CV-2404, 2019 WL 4694217 (N.D. Ohio Sept. 25, 2019), an unpublished Memorandum Opinion and Order entered in the United States District Court for the Northern District of Ohio, in which that Court considered whether a First Amendment retaliation claim was cognizable after *Abbasi*. In that case, after noting that the "strong trend" nationwide is to decline to imply a *Bivens* remedy for a First Amendment retaliation claim, *id*. at *9, the Court nevertheless found

that, given the unique circumstances present in *Himmelreich* (where the Sixth Circuit had previously identified a genuine dispute of material fact about whether the grievance procedure was meaningfully available to the plaintiff), and the fact that the defendants did not dispute that the plaintiff was intimidated out of meaningfully accessing the prison grievance procedure, the Court could not conclude that the existence of a prison grievance procedure counseled hesitation in inferring a *Bivens* cause of action.  *Id*. at *10–11.

However, *Himmelreich* is not persuasive authority, as it is an unpublished decision issued by a Court in another judicial district in which the Court took pains to emphasize that its decision was limited to the unique facts before it.  Indeed, the same District Judge (Judge Benita Y. Pearson), later noted that "*Himmelreich* should not be construed as a blanket recognition that all First Amendment retaliation claims are cognizable under *Bivens*," as "*Himmelreich* was limited to its unique facts."  *Mattes v. Jones*, No. 4:17-CV-952, 2019 WL 5684471, at *6 (N.D. Ohio Oct. 31, 2019).  More critically, *Himmelreich* was entered prior to the Sixth Circuit's decision in *Callahan*, which held that a *Bivens* remedy should not extend to First Amendment retaliation claims.  Finally, unlike the plaintiff in *Himmelreich*, as more fully explained below, this Court rejects Mr. Greene's claim that the prison grievance system was unavailable to him with respect to his constitutional claims, including his First Amendment claims.

For all of these reasons, the Court finds that *Bivens* does not extend to provide an available remedy for Mr. Greene's First Amendment retaliation claim.  Accordingly, this claim will be dismissed with prejudice.

### c

Defendants next argue that Mr. Greene's First and Eighth Amendment claims, brought pursuant to *Bivens*, must be dismissed because Mr. Greene failed to fully exhaust his

administrative remedies prior to filing his lawsuit, as required by federal law.  [R. 48-1 at 8.]

Under the Prison Litigation Reform Act of 1995 ("PLRA"), a prisoner wishing to challenge the

circumstances or conditions of his confinement must first exhaust all available administrative

remedies.  42 U.S.C. § 1997e(a).  The statutory language of the PLRA is clear that "[n]o action

shall be brought with respect to prison conditions under…any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as

are available are exhausted."  *Id.*  "There is no question that exhaustion is mandatory under the

PLRA and that unexhausted claims cannot be brought in court."  *Jones*, 549 U.S. at 211; *see also*

*Woodford*, 548 U.S. at 85 ("Exhaustion is no longer left to the discretion of the district court, but

is mandatory.") (citation omitted); *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011)

(the exhaustion requirement is a "strong one"); *Fazzini v. Northeast Ohio Correctional Center*,

473 F.3d 229, 231 (6th Cir. 2006); *Campbell v. Barron*, 87 F. App'x 577, 577 (6th Cir.

2004).  Administrative remedies must be exhausted prior to filing suit and in full conformity with

the agency's claims processing rules.  *Woodford*, 548 U.S. at 92–94.  Thus, "an inmate cannot

simply fail to file a grievance or abandon the process before completion and claim that he has

exhausted his remedies or that it is futile to do so because his grievance is now time-barred under

the regulations."  *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (citation omitted).

Because the PLRA requires compliance with prison grievance procedures to properly

exhaust, the Court must look to the applicable prison grievance procedural requirements (which

may vary from system to system and claim to claim) to determine whether a claim has been

properly exhausted.  *Jones*, 549 U.S. at 218.  The federal Bureau of Prisons ("BOP") employs a

multi-tiered administrative grievance process.   The BOP's Inmate Grievance System requires a

federal prisoner to first seek informal resolution of any issue with staff.   28 C.F.R. § 542.13.  If a

matter cannot be resolved informally, the prisoner must file an Administrative Remedy Request Form (BP-9 Form) with the Warden, who has 20 days to respond.  *See* 28 C.F.R. §§ 542.14(a) and 542.18.  If the prisoner is not satisfied with the Warden's response, he may use a BP-10 Form to appeal to the applicable Regional Director, who has 30 days to respond.  *See* 28 C.F.R. §§ 542.15 and 542.18.  If the prisoner is not satisfied with the Regional Director's response, he may use a BP-11 Form to appeal to the General Counsel, who has 40 days to respond.  *See* 28 C.F.R. §§ 542.15 and 542.18; *see also* BOP Program Statement 1300.16.  At any level, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18. Because "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules...," *Woodford*, 548 U.S. at 90, the prisoner must file the initial grievance and any appeals within these time frames.

Failure to exhaust administrative remedies is an affirmative defense, thus the Defendants bear the burden of proof.  *Jones*, 549 U.S. at 212.  "When the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012)).  An inmate must make "some affirmative efforts to comply with the administrative procedures," and the Court will analyze "whether an inmate's efforts to exhaust were sufficient under the circumstances."  *Napier*, 636 F.3d at 223–24.  Summary judgment should be granted "if a defendant establishes that there is no genuine dispute of material fact that the plaintiff failed to exhaust."  *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019).

Defendants have submitted the official records of Mr. Greene's administrative remedy history maintained by the BOP, which Mr. Greene does not challenge.  [R. 48-2, Declaration of Robin Eads ¶ 5, Att. C.]  Mr. Greene was incarcerated at USP-Big Sandy from May 31, 2017, through March 13, 2018.  [R. 48-1 at 2.]  According to Defendants, since the January and February 2018 incidents, Mr. Greene has submitted a total of 11 administrative remedy submissions.  [R. 48-2 at 2.]  While Defendants did not include copies of the submissions themselves, the SENTRY report reflects that the following grievances/appeals were received: 1) a submission received on February 20, 2018, stating that psychology staff are unprofessional; 2) two submissions received by the BOP's Mid-Atlantic Regional Office on March 19, 2018, alleging staff misconduct; 3) a submission received on April 23, 2018, alleging unprofessional conduct by staff during a search; 4) a submission received on November 20, 2018, complaining of mail room procedures; 5) a submission received on December 11, 2018, complaining of food service; 6) three submissions received on March 1, 2019, complaining of staff misconduct; 7) a submission received on August 5, 2019, complaining of staff misconduct; and 8) a submission received on August 14, 2019, complaining of staff misconduct.  *Id.* at 11–16.

According to Defendants, the two submissions potentially relevant to Mr. Greene's claims pursued here are the two complaints of staff misconduct that were received by the Regional Office on March 19, 2018.  [R. 48-1 at 10.]  Defendants state that both submissions were rejected, as Mr. Greene had not attached copies of his institutional submission and response as required by 28 C.F.R. § 542.15(b)(1).  Defendants further state that, although all materials would have been returned to Mr. Greene when his submissions were rejected, he did not re-submit the remedy requests at the institutional level.  *Id.*  Thus, these claims were not fully exhausted.

Mr. Greene concedes that he did not fully exhaust his administrative remedies with all of the required levels of the BOP's Administrative Remedy Program with respect to any of his claims alleged in this lawsuit.  However, he claims that his efforts to exhaust his administrative remedies were "thwarted on numerous occasions" by prison staff, who refused to provide him with the BP-8 Forms used to begin the first step of the administrative remedy process, and who generally threatened him about filing grievances. [R. 81 at 1.][6]  Mr. Greene also claims that, "[w]hen Plaintiff has been successful in obtaining said forms, and filed the same, the forms were intentionally mishandled i.e., destroyed, or staff has simply refused to respond back to the administrative remedy process. Making such process unavailable to plaintiff, and other similarly situated inmates." *Id.* at 2.

While the exhaustion requirement of the PLRA is a strong one, the Supreme Court has held that the PLRA requires that a prisoner exhaust "available" remedies, such that exhaustion may be excused if the administrative process is "unavailable." *Ross v. Blake*, 136 U.S. 1850 (2016).  Here, Mr. Greene argues that the administrative process was "unavailable" to him because his counselor (Counselor Lockwood) refused to provide him with BP-8 Forms on at least two occasions and because various threats were made to him by prison staff against filing a PREA complaint, participating in the PREA investigation process, and/or filing grievances. *Id.* at 3.  Thus, of the circumstances articulated by the Supreme Court "in which an administrative remedy, although officially on the books, is not capable of use to obtain relief" for purposes of the PLRA, *Ross*, 136 S. Ct. at 1859, the relevant one here is "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation,

---

[6] While BP-8 Forms are often used for the informal resolution attempt, unlike the regulations regarding the other steps of the BOP's administrative remedy process, 28 C.F.R. § 542.13 does not require the information resolution attempt to be filed on any particular form, stating only that "[e]ach Warden shall establish procedures to allow for the informal resolution of inmate complaints."  28 C.F.R. § 542.13.

or intimidation," such as by "devis[ing] procedural systems…in order to 'trip[] up all but the most skillful prisoners,'" or by "[misleading] or threaten[ing] individual inmates so as to prevent their use of otherwise proper procedures." *Id.* at 1860. (quoting *Woodford*, 548 U.S. at 102).

In his response to the Defendants' motion for summary judgment regarding Mr. Greene's pursuit of his available administrative remedies, Mr. Greene refers to the narrative introductory section of his complaint as proof of his claims, wherein Mr. Greene

> alleges that although he had vigorously attempted to exhaust his administrative remedies related to the allegation included herein, his efforts have been "thwarted" at every turn by the Bureau of Prisons, and members of its staff. Plaintiff has been given the "runaround," has been intimidated by staff members, not to pursue his administrative remedies and staff has, at times, outright refused to provide plaintiff with the necessary forms to exhaust his administrative remedies. When plaintiff has been successful in obtaining said forms, and filed the same, the forms were intentionally mishandled, i.e. destroyed, or staff has simply refused to respond back to the administrative remedy process. Making such process unavailable to plaintiff, and other similarly situated inmates.

[R. 6-1 at 2.]

However, the party opposing a summary judgment motion may not "rest upon mere allegation or denials of his pleading," but must present affirmative evidence supporting his claims. *See Anderson*, 477 U.S. at 256–57. "[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)); *see also Banks v. Rockwell Int'l N. Am. Aircraft Operations*, 855 F.2d 324, 325 n.1 (6th Cir. 1988) ("[A] motion for summary judgment may not be defeated by factual assertions in the brief of the party opposing it, since documents of this nature are self-serving and are not probative evidence of the existence or nonexistence of any factual issues."); *Perry v. Agric. Dep't*, No. 6: 14-168-DCR, 2016 WL

817127, at *10 (E.D. Ky. Feb. 29, 2016) ("[C]onclusory allegations are not evidence and are not

adequate to oppose a motion for summary judgment.").

Moreover, "[a] plaintiff seeking to be excused from the exhaustion requirement on

[unavailability] grounds must do more than make unsupported conclusory allegations of

misconduct by prison officials." *Bell v. Ward*, 189 F. App'x 802, 803–04 (10th Cir. 2006)

(citations omitted); *see also Belser v. James*, No. 16-2578, 2017 WL 5479595, at *2 (6th Cir.

June 6, 2017) (generalized statements are insufficient to create a genuine dispute of material fact

as to whether the administrative process is available).  Thus, Mr. Greene cannot rely on the

conclusory allegations of his complaint (particularly the vague and unspecific allegations

contained in the narrative introductory paragraphs) to defeat a properly supported motion for

summary judgment.

Similarly, while Mr. Greene repeatedly refers to difficulties he had pursuing his

administrative remedies at USP-McCreary, these allegations are irrelevant to whether or not the

administrative process at USP-Big Sandy was unavailable to him in January and February of

2018.  For these reasons, Mr. Greene's reliance on administrative appeals filed in March 2019

regarding his inability to obtain BP-8 and BP-9 Forms at USP-McCreary (as well as a letter from

United States Senator Rand Paul regarding Mr. Greene's request for assistance) are irrelevant to

the inquiry into whether the grievance process at USP-Big Sandy was available with respect to

the specific claims at issue here.

Two of Mr. Greene's First and Eighth Amendment claims relate to the incident that

occurred in late January 2018, in which he claims that Mr. Ousley, Ms. Hirst and Mr. Ferguson

retaliated against him for filing a PREA complaint and that Mr. Ferguson used excessive force

against him while restraining him.  While Mr. Greene generally complains throughout his

23

response and his amended complaint about his inability to obtain grievance forms, he does not affirmatively indicate whether he specifically requested any administrative remedy forms upon which to file a grievance related to the January 2018 incident.  Mr. Greene does submit his own affidavit, as well as an affidavit from another prisoner who claims he was housed at USP-Big Sandy during this time period, both stating that, during the first week of February 2018, Mr. Greene requested two BP-8's and two FTCA forms from Counselor Lockwood, who laughed at him and told him to "just lay down," and claimed not to have any forms on him, even though Mr. Greene says that he saw them in his folder.  [R. 81-1 at 3; 81-3 at 1.]

However, even if Mr. Greene's claim that Mr. Lockwood failed to provide him with a form on this one occasion is true, Mr. Greene does not indicate whether he requested these forms in order to file a grievance related to the January 2018 incident or whether he intended to use it for another purpose, as he was also in the midst of pursuing several other grievances around this time.  For example, Mr. Greene filed an administrative grievance on or around February 20, 2018, alleging that the psychology staff is unprofessional.  [R. 48-2.]  Mr. Greene also used a copy of a Regional Administrative Remedy Appeal form to create a document that he titled "FORMAL NOTICE OF DUTY TO ACT" that he claims to have given to Mr. Kuntzman.  [R. 1-1 at 3.][7]  This "formal notice" that he completed does not reference Ms. Hirst, Mr. Ousley, or Mr. Ferguson, or the events of January 2018 (particularly his allegations regarding Ferguson's use of excessive force).[8]  Thus, the Court finds that, even assuming Mr. Greene allegations to be

---

[7] Thus, Mr. Greene's use of this form to create his own "Notice" demonstrates that he at least had some access to administrative remedy forms during this time period.  *See Blissit v. Fiquris*, 345 F. Supp. 3d 931, 940 (S.D. Ohio 2018) (prisoner's own conduct in filing six informal grievances "demonstrates that not only were administrative remedies available to him, but that he was capable of using them").

[8] Although there is no confirmation on the face of the form indicating that it was ever submitted to prison officials, the notice (dated February 9, 2018) purports to be from Mr. Greene and another inmate and advises Mr. Kuntzman that "Special Investigations Agent Mr. Adkins, along with USP Big Sandy Warden Gregory Kizziah and Associate Warden Garza are currently engaged in a cover-up of a very serious claim filed under the [PREA] as well as a separate attempted murder plot orchestrated by a USP Big Sandy member of staff."  [R. 1-1 at 3.]  The notice further

true, he did not sufficiently identify any affirmative efforts to pursue administrative remedies with respect to his First and Eighth Amendment claims based on the January 2018 incident, nor that the administrative process was "unavailable" to him with respect to these claims as a result of being denied forms.

Mr. Greene's remaining First and Eighth Amendment claims relate to his allegations that Mr. Kuntzman retaliated against him on February 9, 2018, in response to Mr. Greene's "formal notice"; Mr. Kuntzman used excessive force against him by improperly using OC spray on February 9; and that Mr. Kuntzman and Mr. Armes violated the Eighth Amendment by placing Mr. Greebe in four-point restraints on February 9 and leaving him there, even though he had not been properly decontaminated. [R. 1 at 5–6.] With respect to his effort to exhaust these claims, Mr. Greene refers to the allegations of his amended complaint stating that, a few days after the incident, he requested a BP-8 Form from Counselor Lockwood, who responded that he only had BP-9 Forms, which he gave to Mr. Greene. [R. 6-1 at 8.] Mr. Greene then states that he wrote up "the incident that had occurred with Lt. Armes, Ofc. Mitchell, John Doe, as well as the BOP failure to supervise and/or train Lt. Armes and etc." and turned the forms into the Warden directly as he did his rounds in the S.H.U. *Id.*

Mr. Greene does not mention whether he received a response from the Warden with respect to this grievance. However, even if he did not receive a response, this does not render the grievance process "unavailable." Rather, if no response was received, he was permitted to construe the lack of response as a constructive denial, which he may then appeal to the next level. *See* 28 C.F.R. §§ 542.15 and 542.18. He did not.

---

states that Mr. Kuntzman is now under a duty to report this misconduct and that his failure to do so may result in the termination of his employment. *Id*.

Mr. Greene next alleges that, on February 13, 2018, he was visited and interviewed by the United States Department of Justice's Office of the Inspector General's official Special Agent McMahan "regarding the aforementioned sexual misconduct." [R. 6-1 at 8.][9]   According to Mr. Greene, a few days later, Mr. Lockwood and Case Manager Spurlock returned to his cell, stated that they heard he had been talking to the "police" (which Mr. Greene construed as a reference to Special Agent McMahan) and that "we have already told the inmates on the yard, so be expecting to get stabbed up at your next spot."  *Id.*  Mr. Greene states that, despite this threat, he requested two more BP-8 forms and Tort Claims Act forms, which Mr. Lockwood claimed he did not have with him.  *Id.*  Mr. Greene states that "he then asked Lockwood would he [accept] a regular white sheet of paper as a formal BP-8 since he keeps 'forgetting' to bring Mr. Greene's requested BP-8 to the S.H.U., Lockwood stated 'yes'!"  *Id.*  Mr. Greene alleges that he provided the paper to Mr. Lockwood on which he wrote a "thoroughly detailed account of the events that occurred," which Mr. Lockwood promised to process as a formal BP-8.  *Id.*  Mr. Greene states that he never heard back.[10]   However, again, if Mr. Greene received no response to the BP-8 that Mr. Lockwood agreed to accept, the lack of response is a constructive denial, which would permit Mr. Greene to proceed to the next level.  *See* C.F.R. § 542.18.  He did not.

Next, Mr. Greene alleges that he later advised Associate Warden Garza that Mr. Lockwood had refused to provide Mr. Greene with BP-8 Forms.  [R. 6-1 at 8.]  According to Mr. Greene, Mr. Garza then instructed Mr. Greene to "file it on a BP-9 Form instead."  *Id.*  It is not clear whether Mr. Garza meant that Mr. Greene should file a BP-8 using the BP-9 form, or if he

---

[9] It is not clear if Mr. Greene is referring to the alleged sexual misconduct that was the subject of his PREA complaint, or if he is referring to his allegations that Mr. Armes engaged in sexual misconduct during the February 9, 2018, incident.

[10] While Mr. Greene's affidavits submitted in support of his response to Defendants' motion also re-count Mr. Greene's February 13, 2018, request for remedy forms, neither mention Mr. Greene's previous allegation that Mr. Lockwood agreed to accept a grievance written on a plaint sheet of paper as a formal BP-8 Form, notwithstanding that it was not filed using the form.  [R. 81-1 at 5; 81-3 at 1–2.]

was indicating that he would agree to let Mr. Greene skip the informal resolution step. Mr. Greene apparently interpreted this statement to mean the latter, thus he filed his grievance as a BP-9, which he states was rejected because he had not yet filed a BP-8. *Id*. Even so, assuming this allegation to be true, Mr. Greene could have then filed his BP-8 using the BP-9 form (as Mr. Garza seems to have suggested). He did not. Or, because 28 C.F.R. § 542.17(c) permits an appeal of a rejection of a grievance, if Mr. Greene believed that Mr. Garza had wrongfully rejected his BP-9 based on Mr. Garza's prior statement, Mr. Greene could have appealed that rejection to the next level. He did not do that, either.

Thus, even considering Mr. Greene's allegations to be true (as the Court is required to do), his own allegations establish that, while he may have been denied BP-8 Forms from Mr. Lockwood on two occasions in February 2018, the administrative grievance process was still available to him, as Mr. Greene alleges that prison staff agreed *three times* to accept a grievance from him that was not filed on an actual pre-printed BP-8 Form (a form that is not specifically required by the applicable regulation, 28 C.F.R. § 542.13). While Mr. Greene complains that he never received a response to either the first grievance he submitted to the Warden on the BP-9 form a few days after incident, or the BP-8 written on the plain sheet of paper that Mr. Lockwood agreed to accept and process as a BP-8, the failure to respond to a grievance is a denial, which would have permitted Mr. Greene to continue to the next step. *See* 28 C.F.R. § 542.18. He did not do so.

In addition, when Mr. Garza later indicated that he would accept Mr. Greene's BP-8 even if it was filed on a BP-9 Form, he could have filed his request as a BP-8, instead of as a BP-9, which he did not do. And then, even if he believed that the Warden had wrongfully rejected his BP-9 request because he had not previously filed a BP-8, he could have appealed that rejection to

the Regional Director.  Mr. Greene did not take any of these steps.  Mr. Greene's failure to see any of his initial filings through to the next step of the process (which he could have done) does not render the grievance process "unavailable" to justify excusing him from the exhaustion requirement.  *See Belser v. Woods*, No. 17-2411, 2018 WL 6167330, at *2 (6th Cir. July 6, 2018) (where the applicable grievance process construed a lack of timely response as a constructive denial, thus permitting the prisoner to move to the next step of the process, but the prisoner fails to do so, there is no "genuine dispute as to any material fact regarding non-exhaustion") (quotations omitted).

Mr. Greene relies on *Gilmore v. Ormond*, No. 19-5237, 2019 WL 8222518 (6th Cir. Oct. 4, 2019), in which the Sixth Circuit found that the district court erred in concluding that the plaintiff's claims that he had been prevented from filing administrative grievances by prison officials refusal to provide forms and threats to expose the plaintiff as an informant failed to create a triable issue of fact to defeat summary judgment.  Specifically, the Sixth Circuit concluded that the district court erred by rejecting claims made by the plaintiff in an affidavit submitted in response to defendant's motion for summary judgment, finding that "[a]lthough [plaintiff] made contradictory claims about why he was prevented from exhausting his claims, those contradictions go to the weight of the evidence and do not by themselves show that [Defendant] was entitled to summary judgment."  *Id*. at *2.  However, this Court finds that, even assuming Mr. Green's allegations to be true, the administrative process was "available" to Mr. Green, he just failed to follow through with any of the grievances that he filed.

Moreover, the plaintiff in *Gilmore* claimed that he was unable to initiate the grievance process *at all* because he was denied the forms to do so.  Here, Mr. Green alleges that prison staff agreed to accept grievances that were not on the proper form and process them as though

they were filed on a BP-8 Form.  [R. 6-1 at 8.]  When Mr. Greene did not receive a response, under the applicable procedures, he could have proceeded to file a BP-9 related to those issues. He did not.  In addition, if Mr. Greene believed that the BP-9 that he filed with Mr. Garza was wrongfully rejected, he could have appealed that rejection.  He did not.

Mr. Greene also argues that he should be excused from the administrative exhaustion requirement because of the various threats that were made to him about filing a PREA complaint, participating in the investigation of his PREA complaint, and/or generally filing grievances.  In addition to the threat that Mr. Greene claims was made by Mr. Lockwood and Mr. Spurlock after Mr. Greene met with Special Agent McMahan, Mr. Greene alleges that, on December 12, 2017, Mr. Ousley threatened him about filing a PREA complaint by stating, "[d]o you know what could happen to you back here?"  [R. 6-1 at 3.]  Mr. Greene also alleges that, a few days after the February 9, 2018, incident, Mr. Lockwood taunted Mr. Greene with a picture of him in four-point restraints and said, "I bet you won't be reporting sexual misconduct anymore, will you," and stated that Mr. Greene's phone privileges were being taken, so he would not be able to call his lawyer.  *Id.* at 8.

However, unlike in *Gilmore*, while Mr. Greene claims that prison staff made various threats to deter him from reporting his claims of sexual misconduct, he does not claim that the threats actually deterred him from continuing to file grievances related to the constitutional claims alleged in this lawsuit, or from filing appeals when he did not get a response to the grievances that he filed.  Rather, Mr. Greene says that he "knew the importance of such, so I continued to at least request said forms to no avail."  [R. 81-1 at 5.]  In fact, according to Mr. Greene's own allegations, he requested BP-8 forms from Counselor Lockwood immediately after both of the "threats" that he claims were made related to his PREA complaint in February 2018.

29

[*See* R. 6-1 at 8.]  Thus, even assuming Mr. Greene's allegations to be true, he was not actually deterred from filing administrative grievances related to his constitutional claims alleged in this lawsuit because of threats of retaliation made by officials.  Quite the opposite, Mr. Greene claims that he continued to seek to pursue his administrative remedies because he knew it was important and, in fact, he filed 11 grievances since January 2018.  [R. 81-1 at 5; 48-2 at 2.]

In cases where a plaintiff seeking to be excused from the exhaustion requirement claims that he did not pursue the administrative remedy process *at all* because of threats made by prison officials, the Sixth Circuit has examined "whether prison officials took an adverse action that would deter a person of ordinary firmness from continuing with the grievance process."  *Does 8-10*, 945 F.3d at 966 (quoting *Thaddeus-X*, 175 F.3d at 396).  The Sixth Circuit has not issued a published decision in this particular context, where the prisoner claims to have been threatened, but was not actually deterred by the alleged threats from pursuing the administrative grievance process with respect to the claims alleged in the lawsuit that he later filed, nor has it discussed the appropriate test to be applied in such circumstances.  However, in an unpublished decision, it has rejected a plaintiff's claim that the grievance process was unavailable in these circumstances, concluding that the plaintiff failed to establish that he was deterred from filing grievances by threats of retaliation where record showed that plaintiff "was not deterred from filing grievances; he simply seldom followed through on all three steps of the process."  *See Pool v. Klenz*, No. 17-3426, 2018 WL 1989637, at *3 (6th Cir. Jan. 17, 2018).

Similarly, in *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008), the Eleventh Circuit articulated a two-part test to determine whether the grievance process is "unavailable" in such circumstances, concluding

> [A] prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy

      'unavailable,' and thus lift the exhaustion requirement as to the affected parts of
      the process if both of these conditions are met: (1) the threat actually did deter the
      plaintiff inmate from lodging a grievance or pursuing a particular part of the
      process; and (2) the threat is one that would deter a reasonable inmate of ordinary
      firmness and fortitude from lodging a grievance or pursuing the part of the
      grievance process that the inmate failed to exhaust.

*See Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008).  Other Circuit Court of Appeals

that have addressed the issue post-*Turner* have specifically adopted *Turner*'s two-part subjective

and objective requirement, consistently recognizing that the prisoner's actual, subjective

deterrence has an important role to play in determining whether threats of retaliation made the

administrative remedy process "unavailable."  *See Rinaldi v. United States*, 904 F.3d 257, 268–

69 (3d Cir. 2018) (adopting *Turner* test and requiring an inmate seeking to defeat a failure-to-

exhaust defense to show "(1) that the threat was sufficiently serious that it would deter a

reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the

threat actually did deter this particular inmate"); *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th

Cir. 2011) (adopting the *Turner* test requiring both objective and subjective deterrence, as "the

Eleventh Circuit's analysis in *Turner* serves as the best role model"); *McBride v. Lopez*, 807 F.3d

982, 987 (9th Cir. 2015) (adopting the *Turner* test as "straightforward and simple to apply").

      Similarly (and consistent with the Sixth Circuit's decision in *Pool*), this Court finds that

Mr. Greene has failed to establish that any threats that he received rendered the grievance

process "unavailable" to him with respect to the claims alleged in this lawsuit, as his own

allegations make clear that he continued to pursue the administrative remedy process with

respect to these claims, despite allegedly being threatened.  Just as in *Pool*, Mr. Greene "was not

deterred from filing grievances; he simply seldom followed through on all…steps of the process.

*See Pool*, No. 17-3426, 2018 WL 1989637, at *3.  For these reasons, the alleged threats did not

make the grievance procedures "unavailable" to him, as he does not claim that he was actually

deterred from pursuing the administrative remedy process (or pursuing appeals) because of these threats.

For all of these reasons, the Court finds that Mr. Greene failed to fully exhaust his available administrative remedies with respect to his First and Eighth Amendment claims alleged in this case, nor has he shown that the administrative process was "unavailable" to him with respect to these claims. Because his failure to exhaust may not be excused on this basis, his Eighth Amendment claims must be dismissed without prejudice. In addition, even if the Court did not find that Mr. Greene's First Amendment *Bivens* claims must be dismissed with prejudice, it would, in the alternative, dismiss these claims without prejudice for failure to exhaust.

While Defendants also argue that Mr. Greene's Eighth Amendment claims should be dismissed because the evidence shows that neither Mr. Ferguson or Mr. Kuntzman used excessive force against Mr. Greene, these arguments require the resolution of factual issues, which is inappropriate in a motion for summary judgment, particularly where, as here, there has been no formal discovery. Regardless, the Court need not resolve these issues (nor Defendants' qualified immunity arguments) because it finds that the Eighth Amendment claims against Mr. Ferguson and Mr. Kuntzman must be dismissed without prejudice for failure to exhaust.

### d

Mr. Greene's amended complaint also asserts an Eighth Amendment claim against Jason Armes. Although the Court originally directed the United States Marshals Service to serve Mr. Armes with a summons and a copy of the amended complaint on Mr. Greene's behalf, [R. 14], the repeated attempts to serve Mr. Armes were unsuccessful, even after the Court requested the assistance of the United States Attorney's Office. [*See generally* R. 42 (describing efforts to serve Armes).] Thus, in an Order entered on April 23, 2020, the Court discharged the federal

marshals' obligations under Fed. R. Civ. P. 4(c)(3) to serve Mr. Armes and notified Mr. Greene that he was solely responsible for effectuating service on Mr. Armes. [R. 42.] The Court further notified Mr. Greene that, pursuant to the requirements of Fed. R. Civ. P. 4(m), Mr. Armes must be served within 90 days after the complaint was filed. *Id.* at 2. Although the Court also tolled this period through the date of its Order, Mr. Greene was advised that, if he failed to actually serve Mr. Armes with service of process within 90 days from the date of the Court's April 23, 2020 Order, his claims against Mr. Armes would be dismissed without prejudice. *Id.* at 3.

On July 28, 2020 (after the original 90-day time period had expired), the Court granted Mr. Greene a 30-day extension (or until August 27, 2020) within which to serve Mr. Armes, based on Mr. Greene's statements that he had been having difficulty contacting private investigators and/or lawyers to assist with locating Mr. Armes because of the COVID-19 pandemic, but had recently secured the services of a private investigator. [R. 58; R. 59.] On August 31, 2020, the Court received a "notice of effectuated service on Defendant Jason Armes" filed by Mr. Greene attaching a "Proof of Service" executed by Mr. Greene on August 25, 2020, stating that Mr. Greene mailed a "summons package" to Mr. Armes via Certified Mail, Restricted Delivery to Addressee Only. [R. 64.] On September 8, 2020, Mr. Greene filed a copy of a Certified Mail receipt showing that mail had been received by Jason Armes on August 26, 2020. [R. 68.]

The problem with Mr. Greene's chosen method of service on Mr. Armes is that it is directly prohibited by the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 4(c)(2) specifically states that service may be made by "[a]ny person who is at least 18 years old *and not a party*." Fed. R. Civ. P. 4(c)(2) (emphasis added). Thus, because Mr. Greene is a party to the proceeding, he must use a process server to effect service; he cannot do it himself. *Id.*; *Lee*

33

*v. George*, No. 3: 11-CV-607-CRS, 2012 WL 1833389, at *3 (W.D. Ky. May 18, 2012) ("Since Lee is a party to the action, his attempt to serve process upon Judge George renders the service improper."). This remains true even when service is attempted by certified mail. *Constien v. United States*, 628 F. 3d 1207, 1213-15 (10th Cir. 2010) ("Even when service is effected by use of the mail, only a nonparty can place the summons and complaint in the mail.") (collecting cases and citing 4B Charles A. Wright & Arthur R. Miller, *Federal Procedure & Practice* § 1106 n.15 (3d ed. 2002)).

Because Mr. Greene's efforts to serve Mr. Armes do not comply with the Federal Rules, summons on Mr. Armes remains unexecuted. Thus, in addition to the reasons provided above, as Mr. Armes has not been properly served with process within the time period previously provided by the Court, Federal Rule of Civil Procedure 4(m) mandates dismissal of Mr. Greene's claims against him without prejudice. *See* Fed. R. Civ. P. 4(m).

### III

For all of the foregoing reasons, the Defendants' motion to dismiss, or in the alternative, motion for summary judgment will be granted and Mr. Greene's complaint will be dismissed.

Accordingly, **IT IS ORDERED** that:

1.    Defendants' motion to dismiss, or in the alternative, motion for summary judgment **[R. 48]** is **GRANTED**;

2.    Mr. Greene's amended complaint [R. 6, 6-1] is **DISMISSED** as follows:

    a.  Mr. Greene's FTCA claim against the United States and his First Amendment retaliation claims against Ms. Hirst, Mr. Ousley, Mr. Ferguson, and Mr. Kuntzman are **DISMISSED WITH PREJUDICE**;

    b.  Mr. Greene's remaining claims are **DISMISSED WITHOUT PREJUDICE**;

3.      All pending motions or requests for relief in this case are **DENIED AS MOOT**;

4.      This action is **STRICKEN** from the Court's docket.

5.      Judgment shall be entered contemporaneously with this Memorandum Opinion

and Order.

This 29th day of March, 2021.

Gregory F. Van Tatenhove
United States District Judge